**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ELMER GONZALEZ ALTAMIRANO,** | **Civil Action No. 26-1168 (MCA)** |
| **Petitioner,** | |
| **v.** | **MEMORANDUM & ORDER** |
| **ALEXANDER CABEZAS, et al.,** | |
| **Respondents.** | |

This matter comes before the Court on Petitioner's counsel's letter dated February 17, 2026, which seeks his immediate release based on the Immigration Court's failure to hold an individualized bond hearing, as ordered by this Court on February 5, 2026. (ECF No. 10.) This Court directed Respondents to file a response and the transcript of the proceeding. (ECF No. 11.) Respondents sought an extension of time and filed their response and the bond hearing transcript on March 20, 2026. (ECF Nos. 12, 14.) For the reasons explained below, the Petitioner's request for release is **GRANTED**.

## I. FACTUAL BACKGROUND AND PETITIONER'S BOND HEARING

According to his Verified Petition, Elmer Gonzalez Altamirano is a citizen of Mexico who entered the United States without inspection twenty years ago in 2006 and resides in Bronx, New York. (ECF No. 1, Petition at 7, 15.) Petitioner has "zero criminal convictions," and is "the backbone of his family." (*Id.* at ¶ 18.) He met and married his wife, a United States citizen, in 2008, and together they are raising five United States citizen children, including three from her prior marriage. (*Id.*) After Petitioner's wife developed a disabling knee injury in 2023, Petitioner became the primary breadwinner for the household, working as a cook at a restaurant and caring

for their youngest children, ages 11 and 17. (*Id.*) He has raised his stepchildren since their early childhood, and the eldest stepchild is enlisted in the U.S. Army. (*Id.*)

Petitioner is also in the process of adjusting his status to a lawful permanent resident. (*Id.* at ¶¶ 18-19.) He is the beneficiary of an approved I-130 petition, the first step in seeking family-based adjustment of status, as well as an approved I-601A provisional waiver of unlawful presence, which will allow him to undergo consular processing in order to obtain permanent residency. (*Id.*)

On January 29, 2026, Petitioner had just dropped his children off at school and was on his way to visit his wife in the hospital, where she was recovering from knee surgery. (*Id.* at ¶ 16.) Two cars pulled up alongside him, and four to five individuals exited the vehicles and surrounded him. (*Id.*) One of the individuals told him they were looking for someone and wanted to show him a photograph to determine if he knew that person. (*Id.*) After Petitioner agreed to view the photograph and indicated he did not know the individual in question, one of the individuals asked Petitioner to provide identification, which he did. (*Id.*) Upon reviewing his identification and appearing to perform a computer search, these individuals arrested Petitioner. (*Id.*)

After Petitioner's arrest, ICE detained him at Delaney Hall in Newark, New Jersey, and DHS placed him in removal proceedings before the 201 Varick Street Immigration Court pursuant to 8 U.S.C. § 1229a. (*Id.* at ¶¶ 7, 17.) Petitioner is charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. (*Id.* at ¶ 17.)

On February 5, 2026, pro bono counsel filed a Verified Petition on Petitioner's behalf seeking relief under 28 U.S.C. § 2241. (ECF No. 1.) That same day, the Court stayed Petitioner's transfer from this District. (ECF No. 3). Relying on *Rivera Zumba v. Bondi*, No. 25-14626 (KSH), 2025 WL 2753496 (D.N.J. Sept. 26, 2025) and *Vasquez Lucero v. Soto*, et al, No. 25-16737-MCA, 2025 WL 3240895, at *1-2 (D.N.J. Nov. 20, 2025), the Court held that Petitioner was unlawfully

detained under § 1225(b), in violation of the INA and his Fifth Amendment right to due process. (*See id.*)  The Court ordered an individualized bond hearing to be held within 7 days in accordance with 8 U.S.C. § 1226(a).[1]  (*See id.*)

In the proceeding that followed, Petitioner was represented by Nora Searle, a Senior Staff Attorney in the Immigration Practice of the Bronx Defenders Office.  Ms. Searle avers that she entered her appearance as counsel in Petitioner's removal and bond (or custody) proceedings via a Form EOIR-28 (a Notice of Entry of Appearance as Attorney or Representative Before the Immigration Court), the standard form for such appearances in U.S. immigration courts and provided a screenshot of the Executive Office for Immigration Review ("EOIR") Case Portal showing an appearance for "All Proceedings" entered on February 5, 2026.  (*See* ECF No. 10-1, Decl. of Nora Searle ("Searle Decl.") ¶¶ 3-4.)  The Form was accepted by the Immigration Court the same day.  (*Id.* ¶ 5.)  Ms. Searle subsequently checked the EOIR Courts and Appeals System ("ECAS") online filing platform every day to see if a bond hearing was scheduled and also spoke to Petitioner who did not receive notice of a bond hearing.  (*Id.* at ¶¶ 6–7.)

On the evening of February 10, 2026, Petitioner called Ms. Searle to inform her that he saw his name on a list of people who were scheduled for court the next day and that his hearing was set for 9:00 am on February 11, 2026.  (*Id.* at ¶ 8.)  Ms. Searle once again checked her ECAS account which continued to show no bond hearing date scheduled and no ability to upload evidence to the bond record despite having successfully entered her appearance in both custody and removal proceedings five days earlier.  (*Id.* at ¶¶ 8–9.)

---

[1] The Court's Order also alternatively provided Respondents with the opportunity to respond if they believed Petitioner's case was factually or legally distinguishable from *Rivera Zumba* and *Vasquez Lucero*, but Respondents did not elect that option.

Because the Elizabeth Immigration Court was closed for the evening, she could not contact the court until the following morning. (*Id.* at ¶¶ 8, 10.) On the morning of February 11, 2026, Ms. Searle called the court and spoke to a clerk who confirmed the 9:00 a.m. bond hearing. (*Id.* at ¶ 10.) At 8:17 a.m., she spoke to a supervisor and explained that she had filed her Form EOIR-28 the prior week and received no notice of a bond proceeding being scheduled. (*Id.*) The supervisor informed Ms. Searle that Petitioner's proceedings were originally venued at Varick Street Immigration Court and that the Immigration Court in Elizabeth was not aware that an EOIR-28 had been filed and instructed her to file a second EOIR-28. (*Id.*) Ms. Searle averred that in her six-and-a-half years of practice in Immigration Court, this was the first time she was ever instructed to file an EOIR-28 for a second time. (*Id.* at ¶ 3.) After she filed a second EOIR-28, she was able to view the bond docket in full and see the hearing date in her ECAS portal. (*Id.* at ¶ 11.) After accessing the bond docket, Ms. Searle saw that it contained administrative errors, labeling this Court's bond hearing Order as a "Pre-NTA [Notice to Appear] bond redetermination request" despite the fact that an NTA had been filed on January 29, 2026, over a week earlier. (*Id.* at ¶ 12.)

Fifteen minutes later, Ms. Searle joined Immigration Judge Shana Chen's virtual courtroom, stated her appearance for the record as counsel for Petitioner, explained the situation, and requested time to be able to submit evidence. (*Id.* at ¶ 13.) Consistent with her declaration, Ms. Searle explained to Judge Chen that she entered an appearance "in all proceedings" but neither she nor her client was notified of the bond hearing. (Tr. 3:17-4:2) Ms. Searle explained that the lack of notice was due to administrative error, but Judge Chen questioned whether counsel correctly entered her appearance in the bond proceeding. (*Id.* at 4:12-6:16.) The DHS attorney took the position that counsel had "ample notice" and should "withdraw" the request for the bond hearing. (*Id.* at 6:24-7:7.) Ms. Searle responded, "Well, Your Honor, we're not withdrawing our

bond request. We are asking to be given time to submit evidence. Again, I, in very good faith, filed for all proceedings." (*Id.* at 11-12.)   Judge Chen responded that she "did not have a lot of time" but acknowledged that "you are not the only one that has run into this issue." (*Id.* at 7:14-17). Judge Chen then made her ruling as follows:

> [You, Petitioner, were] served on February 6, 2026, informing you that your custody hearing, your bond hearing, would be held today at 9 a.m. Since I don't have your evidence before me, the government attorney asked that you, through your attorney, withdraw your request for bond and refile it after you had an opportunity to properly submit all that evidence. The problem though is now the deadline is tomorrow and I don't have time to wait for your attorney to submit the evidence and to review it before that deadline. It's your choice, you want to proceed with -- you do not want to withdraw your bond hearing, then I have to make a decision today, okay?
>
> So I am denying the request for bond for failure to meet your burden of proof.  You can appeal this decision to the Board of Immigration Appeals by filing a Notice to Appeal by March 13, 2026.

(*Id.* at 8:14-24.)  Although Judge Chen stated that Petitioner was served on February 6, Ms. Searle averred that Petitioner showed her a document he received in the mail on February 12, which provided him notice of the February 11, 2026 bond hearing after it occurred. (*See* Searle Decl. at ¶ 16.)

On February 13, 2026, Respondents' counsel submitted a required update to this Court regarding Petitioner's bond proceedings, stating only that Petitioner "appeared before an Immigration Judge for a bond hearing on February 11, 2026, and the Immigration Judge denied bond." (ECF No. 9.)

II.    **THIS ACTION**

Petitioner's challenge to the bond proceeding followed.  He claims he was denied due process at his bond hearing.  (ECF No. 10.)  Respondents did not respond to Petitioner's letter,

and this Court ordered them to file a response by Friday, March 6, 2026. On the due date, Respondents sought an extension of time until March 20 to order the transcript and respond to Petitioner's allegations.[2] (ECF No. 12.)

Respondents contend that they complied with the Court's order and have no control over the scheduling or conducting of bond hearings, which Respondents aver are the responsibility of the EOIR, a separate agency from ICE and DHS. (ECF No. 14 at 1-2.) Respondents also claim they lack information about the notice issues. (*Id.* at 2-3.) They also suggest that Petitioner should seek bond redetermination or file an appeal to the BIA and that any relief should be limited to a new bond hearing before the Immigration Court. (*Id.* at 3.) In other words, the Parties technically "appeared" before the Immigration Court; this Court's Order was complied with; and the lack of notice was someone else's fault, not theirs.

It is clear that no actual bond hearing occurred here and that the proceeding before Judge Chen was fundamentally unfair. For starters, Respondents do not dispute Ms. Searle's sworn Statement that she (and Petitioner) did not receive adequate notice of the bond hearing. In fact, the only plausible conclusion from Ms. Searle's unchallenged Statement is that the lack of notice was the government's fault, not hers. Respondents sidestep this obvious problem by arguing that EOIR is a separate agency from DHS and ICE, thereby ignoring the fact that EOIR, as well as Immigration Judges, all operate under the authority and direction of the Attorney General—a named Respondent in this matter. *See* 8 CFR § 1003.10; *see also Am. Ass'n of Univ. Profs., et al. v. Rubio, et al.*, --F. Supp. 3d--, 2026 WL 686418, at *11 (D. Mass. Mar. 11, 2026) ("Now that it suits their interests, it is ironic to hear the Public Officials wail that they are but bit players in a fractured government . . . As this Court recognizes, the entire theory of this administration is that

---

[2] The Court grants the request for an extension of time.

of a unitary executive with no agency independence where every single employee within the Article II executive dances to the tune of the President."). It also ignores the truth of what happened here: the government failed to notify Petitioner of the bond hearing and then blamed the Petitioner for not being prepared for a hearing for which he had no notice. That is not fair, and that is not due process. Persons appearing before United States Courts in the presence of government attorneys deserve more.

As Respondents acknowledge, this Court has jurisdiction to determine whether the bond hearing was fundamentally unfair. *See Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022). The bond hearing here was meaningless and violated the spirit and the letter of this Court's Order, which required the Immigration Court to assess whether Petitioner is a flight risk or danger to the community. At DHS's urging, Judge Chen sought to have Petitioner's counsel withdraw the request for a bond hearing and used this Court's seven-day deadline as a sword to deny Petitioner additional time to submit evidence.[3] That deadline was imposed to ensure a prompt and fair hearing, which is the opposite of what occurred here. The hearing was neither prompt nor fair. Respondents then compounded Judge Chen's error with their incomplete status update letter, which neglected to mention that Judge Chen refused Petitioner's reasonable request and denied bond without considering any evidence. And the Court has little doubt that Petitioner would have been released on bond had he been given the opportunity to present evidence. According to his Verified Petition, which is undisputed, Petitioner is a 20-year resident of the United States and a husband and father of United States

---

[3] The government's argument to Judge Chen that Petitioner should withdraw his request for a bond hearing ignores the fact that DHS and the Judge Chen were required under this Court's Order to provide Petitioner with an individualized bond hearing. And instead of maneuvering to keep Petitioner detained for as long as possible, the government could have simply requested an extension of the 7-day deadline in order to provide Petitioner with a fair hearing. This reasonable and obvious solution would have been granted by the Court just as it granted the government's request for an extension of time to submit a response and the transcript.

citizens, one of whom is serving our country in the military.  He has no criminal history and is in the process of adjusting his status.  It is hard to imagine a person who is less likely to flee or pose a danger to others.  And it is hard to fathom a more flagrant disregard of due process rights by those sworn to uphold constitutional principles.

The Court declines to order a second bond hearing and will instead order Petitioner's release.  This Court ordered the first bond hearing out of an abundance of caution and with the expectation that Respondents and the Immigration Court would provide Petitioner with a fair hearing.  It did so despite a recent and disquieting trend of government defiance of court orders in habeas cases, like this one.[4]  Given what occurred here, the Court's confidence was misplaced. The Court has no faith that a second bond hearing will be conducted fairly.  This civil detainee has been incarcerated for almost two months; having had but one fleeting and meaningless hearing. Due process is not about checking a box to comply with a district court order; it is about constitutional fairness and the right to be heard and present evidence.  This did not occur here.  For the reasons set forth above, this Court therefore refuses the invitation to fix this unlawful detention by converting it to a "potentially lawful alternate form under a different statute with different procedural requirements and rules."  *Fajardo-Nugra v. Soto*, No. 26-975, 2026 WL 579192, at *2 (D.N.J. Mar. 2, 2026) (granting petitioner's habeas petition and ordering his release based on respondents' flawed application of § 1225(b)(2)).

For all these reasons, this Court **GRANTS** Petitioner's request for release.

Accordingly, it is on this 25th day of March 2026,

---

[4] The government recently conceded that it violated 56 orders between December 5, 2025 and February 13, 2026.  *See, e.g., Kumar v. Soto,* Civ. No. 26-777, Docket Entry No. 21 (D.N.J. Feb. 13, 2026); *see also Cartagena Hueso v. Soto et al.*, No. 26-cv-1455 (ZNQ), 2026 WL 539271, at *3 (D.N.J. Feb. 26, 2026) (discussing recent violations of court orders issued in this District as a basis to order the petitioner's release).

**ORDERED** that Respondents' motion for an extension of time (ECF No. 12) is **GRANTED**, and the response is accepted as within time; and it is further

**ORDERED** that the Court finds that the bond hearing conducted by the Immigration Court on February 11, 2026, was fundamentally unfair and **GRANTS** Petitioner's request for release; and it is further

**ORDERED** that Respondents shall release Petitioner from detention no later than March 26, 2026 at 10 a.m.; and it is further

**ORDERED** that Respondents are permanently enjoined from detaining Petitioner under 8 U.S.C. § 1225(b) and are temporarily enjoined from detaining Petitioner under 8 U.S.C. § 1226(a) for 14 days; and it is further

**ORDERED** that by 3 p.m. on March 26, 2026, Respondents shall file a status report confirming the time of Petitioner's release and requesting that this matter be closed; and it is further

**ORDERED** that the motion pending at ECF No. 4 shall be terminated in light of the relief provided.

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**United States District Judge**